IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KATRINA READY,

    Petitioner,

v.      CASE NO. 2:07cv618-WHA

UNITED STATES OF AMERICA,
BUREAU OF PRISONS; SUSAN
ROBERTS, WARDEN OF ELMORE
COUNTY JAIL,

    Respondents.

## PETITION FOR WRIT OF HABEAS CORPUS

TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

Comes now your Petitioner, Katrina Ready, by and through her attorney, Benjamin E. Pool, pursuant to 28 U.S.C. §2242, and being first duly sworn, deposes and says as follows:

1. I am the attorney for Katrina Ready and I am familiar with the facts and circumstances in this case.

2. Your Petitioner, Katrina Ready, is presently incarcerated in the Elmore County Jail, having been transferred from Bannum Place Halfway House in Montgomery, Alabama, to the Elmore County Jail on or about May 16, 2007.

3. On May 17, 2001, your Petitioner was sentenced by this Honorable Court to eighty (80) months in prison, Case No. CR-00151-WHA-11. Your Petitioner's sentence

1

is due to expire on August 11, 2007, as a result of statutory good time credit. Sometime prior to May 16, 2007, your Petitioner, while residing at Bannum Place, allegedly tested positive for alcohol, and as a consequence thereof, she was transferred to the Elmore County Jail.

4. The Elmore County Jail is obviously a more restrictive confinement than Bannum Place Halfway House.

5. A Petition For Writ of Habeas Corpus is an appropriate remedy for a prisoner to challenge his/her transfer to a more restrictive confinement. *Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137. In filing this Petition, your Petitioner is seeking a quantum change in her level of custody, i.e., she is requesting that this Honorable Court order her release from County Jail to a less restrictive confinement, such as home confinement, or another halfway house. Her obvious preference is home confinement.

6. Your Petitioner alleges that she is being held in custody in violation of the due process clause of the Fourteenth Amendment to the United States Constitution in that she was not afforded a hearing after being charged with a violation of the rules of the aforementioned halfway house. Specifically, while the Bureau of Prisons contends either that there was a hearing, or that your Petitioner waived her right to a hearing, your Petitioner contends that she was never given an opportunity to testify nor call witnesses in her behalf.

7. 18 U.S.C. §3624(c) provides that the Bureau of Prisons shall, "assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months of the last 10% of the term to be served, under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into

the community." The Federal Bureau of Prisons has violated 18 U.S.C. §3624(c) in that it totally failed to provide your Petitioner with an environment at Bannum Place "that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Rather, the conditions at Bannum Place were so deplorable, seedy and exploitative that your Petitioner was denied her statutory rights under 18 U.S.C. §3624(c). Further, your Petitioner was subjected to cruel and unusual punishment as a result of her confinement at the Bannum Place, and the corrupt activities of the Bannum Place resulted in your Petitioner's transfer to a more restrictive confinement, i.e., the Elmore County Jail. As evidence of the deplorable conditions existing at Bannum Place, attached hereto and made a part hereof by reference, and labeled Exhibits "A", "B" and "C" are the statements of Cecil Wilson, Jeffrey Spurlock, and Douglas Bottoms, Jr., all of whom were inmates of the Bannum Place at the same time that your Petitioner was an inmate at Bannum Place[1].

8.  In this Petition, your Petitioner is challenging not only her transfer to a more restrictive confinement, but the cruel, corrupt, degrading and obscene conditions at the Bannum Place that resulted in her transfer to jail. It has been held that a prisoner has a legally protected interest in the conduct of his/her keeper. *Olim v. Wakinekona*, 461 U.S. 238, 75 L.Ed. 2d 813, 501 S.Ct. 1741 (1983).

9.  Your Petitioner is further challenging the disciplinary process to which she is being subjected. Initially, she was advised that a hearing officer in Coleman, Florida, would make a decision on any disciplinary action to be taken against her within two weeks after she was afforded a hearing at the Elmore County Jail. The Bureau of

---

[1] Affidavits cannot be submitted due to the fact that the Director of Bannum Place would not allow this attorney to interview anyone to obtain affidavits. However, these people should be subject to the power of a Subpoena.

3

Prisons, as previously stated, contends that a hearing was either held, or was waived, on May 29, 2007. Thereafter, the person in charge of Bannum Place, a gentleman by the name of Clifford Coleman, was to file a report with the Department of Hearing Officers in Coleman, Florida, at least that is what her attorney was told. Your Petitioner's attorney was further advised that a hearing officer in Coleman, Florida, would make a decision within two weeks thereafter. However, it has now been approximately six (6) weeks since your Petitioner was transferred from Bannum Place to the Elmore County Jail, and your Petitioner has not been advised of any action being taken by a hearing officer. To the contrary, her attorney was recently advised by the Bureau of Prisons that the disciplinary action pending against your Petitioner has now been assigned to a hearing officer in Puerto Rico. A representative of the Community Corrections Program, namely, one Lanette Fahie, has advised your Petitioner's attorney that she has not been able to get in touch with the hearing officer in Puerto Rico, and that she does not have the authority to release to your Petitioner's attorney the name and/or address of the hearing officer in Puerto Rico.

10. It has been held that habeas corpus is one's exclusive remedy if success of an action "would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 124 S.Ct. 1242 (2005).

11. Your Petitioner seeks from this Honorable Court a ruling that, for the foregoing reasons, will transfer her to a lower security level. Presently, her case seems lost in the bureaucracy of the Bureau of Prisons, and she is left in a state of limbo, without any recourse but to turn to the judicial system for help. Considering the built-in inadequacies and delays in the existing administrative scheme of the disciplinary

process, and further considering that your Petitioner has an EOS date of August 11, 2007, the existing administrative scheme does not provide your Petitioner with adequate redress. *Gonzales v. Perrill*, 919 F.2d 1, stands for the proposition that in a habeas corpus proceeding, one need not have exhausted his administrative remedies where one's administrative remedies do not provide adequate redress.

12. Your Petitioner and her attorney have not filed this Petition without first making every effort to have the Bureau of Prisons afford due process to your Petitioner. Prior to filing this Petition, the undersigned attorney has made numerous attempts to investigate this matter as thoroughly as possible, in an effort to find out the Petitioner's present status in the system, and/or to obtain an administrative hearing, but has found out that Ms. Ready's status is akin to someone being in the twilight zone, surrounded by a group of invisible and unreachable people, viz. the Bureau of Prisons. The following is a list of efforts made before resulting in the filing of this Petition For Writ of Habeas Corpus.

a) **The Director of Bannum Place, Mr. Clifford Coleman**, has been contacted several times by telephone and letter. Mr. Coleman has advised the undersigned attorney that he will not grant your Petitioner an administrative hearing because, according to him, she already had one on May 29, 2007. This, Ms. Ready denies. Mr. Coleman stated that he had sent a report to the Department of Hearing Officer (D.H.O.) in Coleman, Florida, in May 2007, and that D.H.O. would be making a decision on what sanctions, if any, to impose on Ms. Ready within two (2) weeks thereafter. However, the undersigned attorney contacted the D.H.O. Office in Coleman, Florida, and was advised that they had nothing to do with Ms. Ready's case.

Mr. Coleman has refused to allow the undersigned attorney to interview any of the inmates at the Bannum House, and has refused to afford Ms. Ready with an administrative hearing with her attorney present.

Mr. Coleman advised the undersigned attorney as recently as June 29, 2007, that he did not know Ms. Ready's present status; that the person he needed to call is Ms. Lanette Fahie, who is the Manager of the Bureau of Prison's Community Corrections Office.

b) **Ms. Lanette Fahie** has advised the undersigned attorney that what is going on with Ms. Ready is "not public information;" that her attorney has no right to get involved in the matter; that she could not give out the name of the hearing officer in Coleman, Florida (or his/her address). Ms. Fahie did advise the undersigned attorney that Ms. Ready could sign a Release of Information form, in order for information regarding Ms. Ready's case to be released to her attorney. The undersigned attorney went through the necessary procedures to have such a form signed by Ms. Ready, sent to Ms. Fahie's office. However, Ms. Fahie has failed to send any requested information to Ms. Ready's attorney. Instead, she has ignored his requests, including requests that he be provided with a copy of Ms. Ready's file, to include a copy of Mr. Coleman's report to the D.H.O.

Ms. Fahie, upon being advised by the undersigned attorney that the D.H.O. in Coleman, Florida had advised him that they had nothing to do with Ms. Ready's case, stated that the "new" hearing officer was in Puerto Rico, but that she had not been able to contact her. The undersigned attorney asked for contact information regarding such an individual, but Ms. Fahie would not provide that information.

c) **Vivian White**, Community Corrections, Bureau of Prisons (no comment; advised must get all information from Ms. Lanette Fahie).

d) **Richard Shelby**, U.S. Senate (no return call).

e) **Eddie Carter**, Community Corrections Officer, Bureau of Prisons (advised that must get all information from Ms. Lanette Fahie).

f) **Catina Stewart**, Community Corrections (did provide a form for Ms. Ready to sign, which she did, but to no avail).

g) **Ray Totson**, Community Corrections Office (advised to contact Ms. Lanette Fahie).

h) **Jeff Wiloka**, attorney for Bureau of Prisons, Washington, D.C. (very nice but not helpful).

i) **Renea Ross**, an investigator for the Federal Defenders in Montgomery (very nice, but not able to provide any material assistance).

j) **Leslie Hopek**, Clerk's Office, U.S. District Court (very nice; advised that Ms. Ready was about to be put on electric monitoring before being charged with an infraction at Bannum Place, and that her office would have been involved in that; advised undersigned attorney to contact the Probation Department in Dothan, viz. Buddy Johnson, who did pre-sentence report).

k) **Buddy Johnson**, Federal Probation Officer in Dothan (advised that there was nothing he could do).

l) **Federal Probation Office in Montgomery** (advised that to file something with the Court was all they knew to do).

WHEREFORE, your Petitioner, by and through her attorney, prays that a writ of habeas corpus issue directed to the Respondents named herein, commanding them to produce the body of your Petitioner before this Honorable Court at a time and place to be specified in said Writ and to show cause why the Writ should not be granted. **Your Petitioner requests an expedited hearing on her Petition due to her estimated EOS date.**

_____
BENJAMIN E. POOL

OF COUNSEL:
BENJAMIN E. POOL (POO008)
Attorney at Law
Post Office Box 2247
Montgomery, Alabama 36102-2247
(334) 265-3528
(334) 263-2428 FAX

STATE OF ALABAMA        )

COUNTY OF MONTGOMERY    )

Before me, the undersigned authority in and for said county and state, personally appeared BENJAMIN E. POOL who, being first duly sworn, deposes and says that he is the attorney for Petitioner, that he has read said Petition For Writ of Habeas Corpus, understands it, and signs it voluntarily on this the same bears date.

8

SWORN TO AND SUBSCRIBED before me on this the __2__ day of __July__, 2007.

_____
NOTARY PUBLIC
Commission Expires: __8/15/2008__

EXHIBIT "A"

05-25-07

To whom it may concern:

My name is Douglas L. Bottoms, Jr. In my own words I will explain to the best of my ablility what I have seen and heard.

On 05-25-07 about 6:30 AM, came down stairs Mr. Gregg, "Bannum staff", asked me if I had heard anymore about Katrina Ready or anything from her father Mr. Snellgrove. A few days earlier Mr. Gregg approached, asked me in the front office asked about Katrina Ready I said I knew nothing, and he told me that Katrina was filing sexual harrassment charges against certain people at Bannum, which he didn't give any names and that Katrina said, any Urin Sample she gave was clean, that staff switched samples, Mr. Gregg said, this is what Mrs. Rollins told him. Mr. Gregg told me that it was possable to switch U.A.' on that same occaition. These two incidents were about Katrina Ready in perticular. On other occassions I've witnessed Mr. Gregg speak unproffionly with residents, and make luid gestures with his tongue toward females.

On 05-24-07 about 6:30 myself and Cecil Gibson a resident were on the front porch smoking when we were approached by Mr. Ruiz a "Bannum staff member" in friendly conversation asked us if we had money buried such things as that, said that Mr. Coleman was skimming off the subsestence money that Mr. Coleman was a drunk, small talk, he, Mr. Ruiz was drinking at the time. I've seen on several occations Mr. Ruiz allow residents to smuggle beer into the half way house. I've seen Mr. Ruiz make passes at female residents. I've seen Mr. Ruiz take one bribe from David Fuller on a Breath test. I also know that Mr. Ruiz approached Katrina Ready in the staff bathroom on one occation and put his hands on her. I don't remember dates.

On several occaitions I've been approached by Mr. Washington a "Bannum staff member" and been asked for money which would allowed me anything from drinking to leaving at night to having a female in my room at Bannum. I've heard Mr. Washington proposition female redidents, one line he used regularly was give me some money if you don't have that give me some pussy I know you have that

I've seen Mr. Calhoun a Bannum staff member threaten to have a resident sent back to prison, not give certain residents their food trays. I witness Mr. Calhoun give one black resident a breath test, that resident failed the test and nothing was done about it.

I've witness many unprofessional acts by all the Bannum staff at one time or another.

Douglas L. Bottens, Jr
Bannum Place of Montgomery
540 Sayre Street
Montgomery, AL. 36104

EXHIBIT "B"

To Whom it may Concern,                                   5-25-07

   My name is Jeffrey Aaron Spurlock #11385-002. I'm a resident at the "Bannum Place", 540 Sayre St. Montgomery AL. I would like to give a statement on what's going on here at the "Bannum Place". I've had a Staff (Mr. Calhoun) give me a breath test while I had a piece of candy in my mouth and it tested positive. He told me to give a hundred dollars or he would send me back to prison. I told him I hadn't been drinking and he said he didn't care. My girlfriend gave him the hundred dollars because she didn't want me to get in any trouble. He took the money and still wrote it up as I was drinking. I was giving a Urine test at the time I took the breath test and it was negative. Since then I've been denied all my passes for one reason or another. My 6 yr old niece was killed and I was denied the pass for the funeral. At the same time Mr. Coleman the director, let residents that are on CCC go to graduations. I will never get to see my niece because he wouldn't let me see her for the last time.

   Every evening I come from work and Mr. Calhoun works, I'm searched and given a breath

my dinner plate several times, but he gives the other residents their. He tells me their isn't anymore while I'm looking at them. I've paid 25% of my gross pay every week and I still have to buy my own food. Mr. Calhoun wrote me up because he denied me my dinner and I told him I was going to write him up, I didn't care what he did, that I go home in a few days. He wrote me up and said I was hostile and that I threaten to do harm to him. That was not true. I've also seen 3 white people get sent back to prison for drinking (Dave Fuller, Catrina Ready, don't know the other ones name.) At the same time 2 black men failed the breath test and nothing was done to them. I've seen a couple of staff recieve money for bribes. This house is not helping residents to succeed in society, it's free trip back to prison for the ones trying to do right and it shows the others that they can do wrong in life and buy their way out of it if they get caught.

Sincerely,
Jeffry Spurlock

EXHIBIT "C"

5/28/07

To whom it may concern:

I would like to start out by saying, that if I had known the situation at Bannum Place prior to coming here, I would have chosen to remain in prison.

The staff at Bannum are the most unprofessional that I have ever dealt with, they are the most incompetent I have ever seen. Mr. Ruiz, Mr. Gregg, and Mr. Washington are the primary culprits, they shouldn't be allowed on the property. All three of the men attempt to extort money from residents by allowing them to leave the half-way house at nite, to also have restricted items at the facility, alcohol, phones, etc.

Mr. Ruiz on several occassions has smelled of alcohol, and has tendencies to speak to female residents with sexual overtones. I have also witnessed him recieve money for favors he has allowed to certain residents.

Mr. Washington is also on the hustle, allowing residents to gain free passes, by recieving cash money for these favors. He also sleeps in his vehicle during shifts.

Mr. Gregg is granting favors for food and money, as well as his sexual ones - tours to female residents, he's a real piece of work.

These three people shouldn't be allowed to work any where that their responsibility needed. They aren't reputable employees.

Cecil F. Wilson
11535-002