IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KATRINA READY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **2:07-cv-618-WHA** |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Respondents. | ) | |

<u>**RESPONSE TO PETITION FILED PURSUANT TO TITLE 28,
UNITED STATES CODE, SECTION 2241**</u>

Comes now the respondent, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and pursuant to the Court's Order of July 6,

2007, responds to the petition filed pursuant to 28 U.S.C. § 2241.

**I.      Subject Matter Jurisdiction**

Petitioner brings this action pursuant to 28 U.S.C. § 2241.  Section 2241 provides

an avenue of relief for inmates who allege violations of federal law which make the place,

condition, or duration of confinement illegal through a petition for writ of habeas corpus.

The claims presented are properly brought as a petition for writ of habeas corpus.  <u>Preiser</u>

<u>v. Rodriguez</u>, 411 U.S. 475, 499 (1973); <u>Abella v. Rubino</u>, 63 F.3d 1063, 1066 (11th Cir.

1995).  Thus, the court has subject matter jurisdiction.

**II.     Parties**

**A.      Petitioner**

Petitioner, Katrina Ready, federal register number 10772-002, is currently

incarcerated at the Elmore County, Alabama Jail. She is currently serving 80 months with

five years supervised release for conspiracy to possess with intent to distribute marijuana

and methamphetamine of 21 USC § 846.[1] The petitioner's projected release date is

September 24, 2007.[2]

**B.    Respondents**

Petitioner has named the United States of America, the Bureau of Prisons, and

Susan Roberts, Warden of the Elmore County Jail, as respondents in this matter. The

proper respondent in federal habeas cases is the custodian of the institution having

custody of the petitioner. See 28 U.S.C. § 2243. Rumsfeld v. Padilla, --**U.S.**--, 124 S.Ct.

2711, 2717-18 (2004) (the only proper respondent in a section 2241 habeas case is the

prisoner's immediate custodian.); Braden v. 30th Judicial Circuit Court, 410 U.S. 484

(1973).

**III.    Petition**

Petitioner has filed a habeas petition pursuant to 28 U.S.C. § 2241 claiming her

due process rights were violated because she was transferred from Bannum Place,

Community Corrections Center (CCC) to the Elmore County Jail and possibly being

returned to a BOP prison.

---

[1]    See, Judgment, Doc. 389, 1:00-cr-00151-WHA-11, United States District Court
for the Middle District of Alabama.

[2]    Evidence in support of the petitioner's projected release date to be offered at the
hearing scheduled in this matter for July 9, 2007.

Petitioner alleges, in essence, that she was denied her due process rights during the disciplinary process which resulted in her removal from Bannum Place to the Elmore County Jail and possibly to a BOP prison.  Petitioner was scheduled to be released from the halfway house on August 11, 2007, but as a result of her testing positive for the presence of alcohol while a resident at Bannum Place she is projected to be released from the BOP on September 24, 2007.

## IV.    Disciplinary Procedures At CCCs

Pursuant to Program Statement (PS) 7300.09, <u>Community Corrections Manual</u>, Chapter 5.7, CCCs are required by the term of their contracts to use a discipline system where a BOP Discipline Hearing Officer (DHO) takes final action.  Thus, several BOP forms are used during the CCC's discipline process.  See Relevant Sections of PS 7300.09, **Attachment 2.**[3]  CCC's utilize Table 3 of the Prohibited Acts and Disciplinary Scale contained in PS 5270.07, <u>Discipline and Special Housing Units</u>.  **Attachment 3**, PS 5270.07, Table 3**.**

Ordinarily, within three working days of receipt of the Center Disciplinary Committee (CDC) packet, a Discipline Hearing Officer (DHO) shall review it for compliance with the CDC discipline policy specified in PS 7300.09 and <u>Wolff v. McDonnell</u>.  The DHO shall complete the Checklist for Center Discipline Committee Certification form and place it in front of the CDC packet.  The DHO shall also sign and

---

[3]    Attachment 1 intentionally omitted.

date the CDC Report on the top right side to certify compliance with disciplinary

requirements.  If the DHO is not satisfied that all criteria are met, they will return the

packets and point out errors and omissions to be corrected.  If the DHO experiences

recurring problems, the Community Corrections Manager (CCM) should be notified so

the issue can be addressed as a matter of contract compliance.

Pursuant to PS 7300.09, inmates may appeal disciplinary action imposed by the

CCC/CDC staff or DHO through the Administrative Remedy process.  When disciplinary

action is imposed, the inmate shall be advised of the appeal procedures.  See **Attachment**

**1,** Section, 5.7.6.  If the inmate is being transferred to a federal institution, he/she shall

wait to use the Administrative Remedy procedure upon arrival at the institution.  Id.

## V.    Statement of Facts [4]

On May 8, 2007, the petitioner was required to provide a urine sample to officials

of Bannum Place which was tested for the presence of various contraband, including

alcohol.  Ms. Oliver, a female employee of Bannum Place requested the sample from the

petitioner in accordance with a schedule for random testing of the residents established by

the director, Mr. Coleman and another facility employee, Mr. Vane

The petitioner and Ms. Oliver entered the staff restroom which contains two toilets

not separated by a divider of any kind where the petitioner was required to urinate in a

---

[4]    The United States will present evidence, testimonial and documentary, in support
of the averments in this section during the course of the hearing scheduled to be held in this
matter on July 9, 2007.

collection cup and then pour her urine into a collection bottle.  All this was done in the

presence of Ms. Oliver, who then, in the presence of the petitioner, placed a seal on the

bottle which bore a unique identifying number, 807127.  The petitioner was then required

to sign the seal placed on the bottle. The petitioner was also required to certify that the

sample contained in the bottle bearing her signature was hers.  The specimen was

forwarded to Redwood Toxicology Laboratory for analysis.   On May 15, 2007, Redwood

Toxicology Laboratory reported that the specimen  bearing # 807127, collected from

identification number 10772-002, the petitioner's BOP registration number, was positive

for the presence of alcohol (ethanol).

Given that this indicated the petitioner had violated facility rules of which she was

apprised on March 23, 2007, the petitioner was transferred to the Elmore County Jail on

May 16, 2007, pending disciplinary action for a violation of Code 222, Making ,

Possessing or Using Intoxicants.  On May 23, 2007, Ms. Oliver delivered a copy of the

incident report, BP Form S 206.073 to the petitioner at the Elmore County Jail and a

Notice of Center Discipline Committee Hearing, BP Form S 207.073.  The petitioner

identified Lloyd Snellgrove and Brenda Henderson as witnesses who wold present

evidence on her behalf at the the hearing scheduled for May 29, 2007 at the Elmore

County Jail.

At the hearing held on May 29, 2007, the petitioner declined to address the charges

or to offer any evidence to refute the results of the report of the Redwood Toxicology

Laboratory report.  Given the absence of any wrongdoing regarding the collection, testing, or authenticity of the specimen, the hearing officer, Ms. Carolyn Rollins determined that the petitioner had committed a violation of the applicable rules and recommended that the Disciplinary Hearing Officer (DHO), if it affirmed the violation had occurred, impose a penalty disallowing between 25% and 50% of the petitioner's good time credit and a disciplinary transfer.

The matter was referred to a DHO of the BOP which certified the proceedings held by Ms. Rollins.  Given the loss of good time prescribed by Ms. Rollins and certified by the DHO, the petitioner's projected release date is September 24, 2007.

## VI.     Legal Analysis

### A.     Petitioner Received The Procedural Protections Mandated By <u>Wolff</u>

The petitioner states her due process rights were violated because she was "never given an opportunity to testify nor call witnesses in her behalf.  With any procedural due process challenge, the first question is whether the injury claimed by plaintiff is within the scope of the Due Process Clause.  <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1290 (11th Cir. 1999); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1990).  The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV.  In this case, a liberty interest is created because the petitioner lost 47 days good conduct as a result of the disciplinary infraction.  See, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)(prisoners may not be deprived of statutory "good

time credits" without due process).

Under Wolff, where a liberty interest is implicated, several protections must be afforded to ensure due process during the discipline process. These protections include, 1) a minimum 24 hour advance written notice of the claimed misconduct, 2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, 3) a written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action taken. Wolff at 563-566.

The petitioner was given 24 hour advance written notice of the charges, access to a staff representative, notice of her rights, and the opportunity to present witnesses and documentary evidence at the hearing. After the hearing, the petitioner was given specific reasons for the CDC decision and the rationale for the recommended disciplinary action. Therefore, the petitioner received all due process protections.

### C.    The DHO Had Enough Evidence To Certify The CDC Finding

A minimum requirement of due process is that conclusions of prison disciplinary bodies be "supported by some evidence in the record." Superintendent, Mass. Institution Facility v. Hill, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require [a reviewing court's] examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could

support the conclusion reached by the disciplinary board.  "Id. at 455-56; Thomas v.

Fountain, 77 F.3d 372, 375 (11th Cir. 1996).

In the instant case, there is evidence in the record that the petitioner, in fact, used

alcohol.  Her urine specimen collected on May 8, 2007 revealed the presence of alcohol.

This alone is enough to sustain the finding Petitioner committed the act as charged and

the sanctions imposed were appropriate.  Moreover, the petitioner can produce no

evidence that the specimen was tampered with or not tested in accordance with accepted

scientific practices.

**VIII.  Recommendation**

For the reasons indicated above, Petitioner's motion is due to be and should be

denied.

Respectfully submitted this 8th day of July, 2007.

LEURA G. CANARY
United States Attorney


By:    s/R. Randolph Neeley
       R. Randolph Neeley
       Assistant United States Attorney
       Bar Number:  #9083-E56R
       Attorney for Defendant
       United States Attorney's Office
       Post Office Box 197
       Montgomery, AL  36101-0197
       Telephone: (334) 223-7280
       Facsimile:
       E-mail:  rand.neeley@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/EDF system which will send notification of such filing

to plaintiff's attorney, Benjamin E. Pool, Esq.

<div style="margin-left:50%">

s/R. Randolph Neeley

R. Randolph Neeley
Post Office Box 197
Montgomery, AL 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-Mail:  rand.neeley@usdoj.gov
Bar Number: #9083-E56R

</div>

# RESPONDENT'S EXHIBIT 2

DEFENDANT'S
EXHIBIT
2



U.S. Department of Justice
Federal Bureau of Prisons

# Program
# Statement

| | |
|---|---|
| **OPI:** | CCD |
| **NUMBER:** | 7300.09 |
| **DATE:** | 1/12/98 |
| **SUBJECT:** | Community Corrections Manual |

1. <u>PURPOSE AND SCOPE</u>.  To operate community-based corrections for offenders who are reintegrating into communities and require more supervision than traditional probation or parole, or who need an alternative to incarceration.  Community corrections is also responsible for managing Federal offenders confined in non-Bureau facilities.  Most Bureau community corrections programs are implemented through contracts and agreements with private service providers and with state or local governments.

2. <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

   a.  A variety of community-based correctional services and programs will be available for offenders.

   b.  Contracts and budgets for community-based services and programs will be effectively managed.

   c.  Offenders in community programs will receive appropriate supervision.

   d.  The public will be protected from undue risk.

   e.  Offenders in community programs will be provided safe living environments.

   f.  Eligible inmates in community programs will have opportunities for work experiences to develop positive skills, knowledge, and work habits.

shall be called to pick up the inmate immediately,
unless the CCM chooses to expunge the incident report
and charge the inmate with another accountability code.

If there are no significant criminal charges and a
transfer to a Bureau institution is the most
appropriate course of action, regular transfer
procedures shall be followed as with any other CCC
failure.

(6)   If significant time has passed (weeks or more)
from the date of escape and/or there have been
significant criminal charges, the CCM shall do a new
Inmate Load and Security Designation Form, BP-S337.

(7)   The Program Statement on **Escape from Extended
Limits of Confinement,** provides guidelines for giving
full credit for time served while detained or arrested,
gives procedures for when a state institution is
designated for continued service of Federal sentence,
and explains situations where escape status is to be
nullified.  Complex situations for which there appear
to be no clear policy guidelines must be referred to
the Regional Inmate Systems Administrator (RISA).

(8)   The CCM shall check quarterly to see if an escapee
has been apprehended via SENTRY, NCIC, and the USMS.
The results of this check shall be documented.

5.7  DISCIPLINE/IN-PROGRAM FAILURES.  This section applies to all
inmates in contract facilities which are required, by the terms
of their contract, to utilize a discipline system in which a
Bureau DHO takes final action.  For inmates identified as having
sentences affected by the Violent Crime Control and Law
Enforcement Act (VCCLEA) and the Prison Litigation Reform Act
(PLRA), also see Section 5.8, SPECIAL DISCIPLINE PROCEDURES FOR
VCCLEA/PLRA INMATES IN NON-FEDERAL FACILITIES.

For those contract facilities which are not required to utilize
Bureau discipline procedures (generally local jails and state
Department of Correction's) the CCM will ensure the facilities
utilize and adhere to the concepts of due process as outlined in
Wolff v. McDonnell.

The Program Statement on Inmate Discipline and Special Housing
Units and prescribed procedures for inmate discipline as
contained in the contractors respective Statement of Work shall
be referenced.

The following Bureau forms are used during the community corrections disciplinary process and can be found on BOPDOCs:

BP-S494.073    Checklist for Center Discipline Committee
               Certification;
BP-S205.073    Incident Report (CCC's);
BP-S206.073    Inmate's Rights at Center Discipline Committee
               Hearing (CCC's);
BP-S207.073    Notice of Center Discipline Committee Hearing
               (CCC's);
BP-S495.073    Waiver of Appearance (CCC's);
BP-S209.073    Duties of Staff Representatives (CCC's);
BP-S208-073    Center Disciplinary Committee Report (CCC's);
BP-S389.058    Statutory Good Time Action Notice;
BP-S390.058    Extra Good Time Recommendation; and
BP-S448.058    Good Conduct Time Action Notice.

The following tables are used during the community corrections disciplinary process and can be found in the Program Statement on **Inmate Discipline and Special Housing Units:**

Table 3        Prohibited Acts and Disciplinary Scale
Table 4        Sanctions (<u>Note</u>: Sanctions applies with the
               exception that the VCCLEA/PLRA exemplary
               compliance requirement does not apply to inmates
               in contract facilities).
Table 5        Sanctions for Repetition of Prohibited Acts within
               the Same Category

The Discipline Hearing Administrator (DHA) is responsible for establishing procedures, within their respective region, for mailing completed CDC packets for review and imposition of final action.

### 5.7.1.  <u>Community Corrections Center Staff</u>

The contractor shall comply with the Bureau of Prisons prescribed policy and procedures for inmate discipline as contained in their respective **Statement of Work**. No deviation from this policy may be permitted.

### 5.7.2.  <u>Procedures Upon Admission to Center</u>

The contractor shall furnish a copy of "Table 3-Prohibited Acts and Disciplinary Scale," found in the Program Statement on **Inmate Discipline and Special Housing Units**, the center's disciplinary system, and the established rules to each new offender upon arrival. Copies of these documents shall be posted at a prominent location accessible to all offenders. The

offender's file shall contain a receipt, signed by the offender, stating that the offender has received and understands the contents of these documents.

### 5.7.3. Discipline Hearing Officer (DHO)

Ordinarily, within three working days of receipt of the Center Disciplinary Committee (CDC) Packet, the DHO shall review it for compliance with the CDC discipline policy specified in this Manual and Wolff v. McDonnell. If there are any discrepancies in the CDC packet, the DHO shall communicate directly with the Chairperson of the CDC by telephone or written correspondence. In order to ensure that all phases of the discipline hearing record are complete and the findings are based on facts, the procedures have been followed, and that any delays are justified, the DHO shall complete Form BP-S494.073, "Checklist for Center Discipline Committee Certification," and place it in the front of the CDC packet. The DHO shall also sign and date the Center Discipline Committee Report on the top right side to certify compliance with disciplinary requirements. If the DHO is not satisfied that all criteria are met, they will return the packets and point out errors and omissions to be corrected. If the DHO experiences recurring problems the CCM should be notified so the issue can be addressed as a matter of contract compliance. If the DHO is satisfied that all criteria are met, they will certify, impose final action, and sign and date the CDC report.

Additionally, the DHO will enter the incident report and charges using the SENTRY transaction "Update Charges" as well as revise the "Add Hearings/Findings" transaction immediately after final action is taken and enter the SENTRY report number in the upper right corner of the Checklist for CDC Certification. The report will be given an initial incident report status of "CDC." If an inmate has any prior discipline action, the DHO shall determine if there are any executable suspended sanctions using the SENTRY Sanctions Available to Execute. The Update Changes transaction should be done as soon as the packet is received from the CCC, even if the case is to be returned for corrective action. Doing so provides an effective tracking system of reports under review.

The DHO shall maintain a log to record pertinent information on each case reviewed. At a minimum, the log shall include; the inmate name, register number, facility, date of CDC hearing, date received by DHO, date returned (if errors were discovered), date reply received, final action date, SENTRY entry date, SENTRY

Incident Report number and date forwarded to the CCM. This
information shall be available for review by the Discipline
Hearing Administrator and the Community Corrections
Administrator.

### 5.7.4. Procedures CCM to Follow After Imposition of Sanctions

When the CCM receives the CDC packet from the DHO, they shall
further review the CDC packet to ensure that it has been
certified, sanctions imposed, signed and dated by the DHO as
required. The DHO's sanction is final and subject only to the
CCM's review to ensure conformity with the provisions of the
Community corrections discipline policy.

The CCM shall also ensure the sentence is recomputed and/or
initiate the transfer, if appropriate, and ensure that any other
sanctions imposed by the DHO are executed in accordance with
directives.

The CCM shall notify facility staff in writing of decisions
and provide a copy of the CDC report for the inmate within three
working days, if possible, but no longer than five working days
from date of receipt of the final disposition from the DHO. Part
II of the Incident Report (investigation) may not be given to the
inmate. Any exceptions to this notification procedure must be
justified and documented. If the inmate's whereabouts are
unknown, as in the case of an escapee, the report and all
material shall be sent to the parent institution for inclusion in
the inmate central file. If an inmate is in-transit, his or her
copy is to be sent to the transfer destination with a note to
deliver it to the inmate upon arrival. Whatever action is taken
to provide an inmate with his copy of the CDC report, must also
be documented on the CCM's copy.

The CCM shall forward a copy of the CDC report to the U.S.
Parole Commission on all cases with a parole date.

The CCM shall maintain a copy of a complete CDC packet for 12
months or until the next program or operational review is
conducted. In escape cases, a duplicate packet shall be
maintained until it has been determined the inmate has been
returned to custody and the discipline process has been
completed.

The CCM shall maintain a log to record pertinent information on
each case processed. At a minimum, the log shall include; the
inmate name, register number, facility, date of CDC hearing, date
received from DHO, final action date, SENTRY Incident Report
number, and the date a copy was sent to Inmate/CCC/USPC. This

PS 7300.09
1/12/98
Chapter 5, Page 21

information shall be available for review by the Discipline Hearing Administrator and the Community Corrections Administrator and shall be retained for at least two years.

Unless otherwise specified in the respective contract, state and local institutions and detention facilities may use their own discipline procedures as long as they comply with the due process requirements of Wolff v. McDonnell. These facilities may choose to use the procedures and forms for discipline in CCCs, providing the documents are modified to indicate the facility is other than a CCC. The CCM shall closely monitor these discipline systems to ensure continued compliance with Wolff v. McDonnell requirements.

5.7.5.  **SENTRY Transactions**

The CCM shall complete and place in the inmate's file any of the following forms that are applicable: Form BP-S389.058, Statutory Good Time Action Notice; Form BP-S390.058, Extra Good Time Recommendation; Form BP-S448.058, Good Conduct Time Action Notice. The CCM shall forfeit and/or disallow any Good Time in SENTRY as directed by the DHO.

5.7.6.  **Appeals**

An inmate in a Community corrections facility or program may contest disciplinary action imposed by the CCC/CDC staff or the DHO by appealing through the Administrative Remedy Program. At the time the inmate is advised of the disciplinary action, they shall also be advised of appeal procedures.

If the appeal involves only minor sanctions imposed by CCC/CDC staff, a Request for Administrative Remedy (EMS Form 229 - not available on BOPDOCS, paper only), may be used to appeal the action to the CCM. Minor disciplinary sanctions are not entered into the SENTRY "Inmate Discipline Data System." However, when a CCC/CDC minor sanction is appealed to the CCM via a Request for Administrative Remedy, the CCM must ensure that the appropriate data is entered into the SENTRY Administrative Remedy Module.

If the appeal involves final sanctions imposed by the DHO on an incident report (major or minor), the following shall determine the method to file an appeal:

Request for Administrative Remedy form, filed with the respective Regional Director for inmates still assigned to a CCC.

PS 7300.09
1/12/98
Chapter 5, Page 22

Letter to the Regional Director for inmates who have been
removed from a CCC and placed in local jails or contract
detention facilities and do not have access to the
appropriate appeal form.

If the inmate is to be transferred to a Federal institution,
the inmate should wait to use the Administrative Remedy
procedure upon arrival at the institution.

### 5.7.7.  Training Plans/Agenda

The DHA shall ensure inmate discipline training is provided
for the contractor and CCM staff annually and any additional
training as needed.  The training agenda shall focus on major
problem areas identified during DHO review of the CDC packets.

The CCM shall continue to provide initial guidance and
supplementary training to new staff or contractors between the
regional-wide training conferences.  All discipline training
provided to contractors shall be documented in the CCM contract
file.

### 5.8.  SPECIAL DISCIPLINE PROCEDURES FOR VCCLEA/PLRA INMATES IN NON-FEDERAL FACILITIES.  Specific procedures relating to VCCLEA/PLRA are being developed.

### 5.9.  TRANSFER OF INMATES

5.9.1.  Authority to transfer Federal inmates between non-
Federal facilities and from non-Federal facilities to Federal
institutions is delegated to CCMs.  General procedures are
provided in the Security Designation and Custody Classification
Manual.  When transferring inmates, care must be taken to obtain
CIM clearance when necessary, and to inform regional staff of
cases that may evoke publicity or require unusual handling.

5.9.2.  CCMs must obtain approval from the receiving facility
(or other CCM if the receiving facility is in another service
area) before ordering transfer of inmates to other non-Federal
facilities.  Ordinarily, CCMs must approve transfers from one
facility to another within the same agency or state correctional
system prior to the transfer.  CCMs may authorize transfers from
non-Federal to Federal institutions, but must consult with the
Regional Designator.

5.9.3.  Appropriate transfer codes must be used in accordance
with current directives.  A disciplinary transfer (Transfer Code
309) requires this sanction to be formally imposed by the DHO
following a CDC hearing.

5.9.4.  CCMs shall use the SENTRY redesignation transaction to authorize the transfer of CCC program failures to Federal institutions.  CCMs shall include appropriate comments (program failure, etc.) in the Remarks section of the redesignation screen and do not need to send EMS messages to explain the redesignation unless there is insufficient space in the Remarks section. Redesignations will appear on the designated institution's daily log and will place inmates in the "pipeline" for population management purposes.

5.9.5.  CCMs shall obtain CIM clearance before redesignation. Following a determination that an inmate should be returned to an institution, and after CIM clearance and consultation with the Regional Designator, if necessary, the redesignation shall be completed as follows:

                Register Number       :   12345-678
                Name                  :   Kilroy
                Sex, Race, Age        :
                Custody               :
                ARS Status            :
                Resident              :
                Level                 :
                Facility Designated   :   LOM

5.9.6.  Standard From BP-S399.058, Transfer Order, shall be provided to the USMS.  When time constraints require expedience, CCMs may provide transfer orders to the USMS via teletype, facsimile, or SENTRY using EMS Form 417.  A signed, printed copy serves as the original for the USMS, and copies may be routed to the ISM at the receiving institution, the Regional Designator, and the U.S. Parole Commission, if applicable.  A SENTRY-generated In-Transit Information Form should also be provided to the USMS.  The CCM provides a copy to the receiving facility.

5.9.7.  CCMs shall ensure that file material, including original disciplinary reports and copies of communications to the U.S. Parole Commission, are forwarded immediately to redesignated institutions.  They shall notify institutions of special circumstances that might affect an inmate's release date or future institution adjustment.

5.9.8.  CCM staff shall remove inmates from EGT earning status (SENTRY Sentence Monitoring) when they are removed from CCCs and shall modify the sentence computation to reflect forfeited or withheld statutory good time.

## 5.10.   PAROLE HEARING PROCEDURES

CCMs are responsible for establishing procedures for U.S. Parole Commission hearings on all eligible inmates.  CCMs must develop parole files for inmates who are eligible for parole, prepare dockets, submit lists of eligible inmates to the U.S. Parole Commission, and help facilitate arrangements for hearings.  If the non-Federal institution does the docketing, the CCM must thoroughly monitor the procedure.  One suggested method of monitoring would be to use the Parole Date sentence computation function of SENTRY to establish a parole waiting list in SENTRY, similar to Federal institutions.

The U.S. Parole Commission must be notified whenever a CCC inmate with an effective parole date is arrested before the release date.

The U.S. Parole Commission must receive a mini-file on these inmates by the 10th of the month preceding the month of the examiners arrival for the hearings.  The files must include: parole application, sentence computation, Presentence Investigation Report and probation revocation report, if applicable.  If available, the following should also be sent: FBI arrest record (rap sheet), classification study, Report on Committed Offender (AO 235), and Report on Convicted Offender by United States Attorney (USA-792).

## 5.11.   VICTIM AND WITNESS PROTECTION ACT OF 1982

The Program Statement on Victim and Witness Notification is the primary document for procedures in this area.

Transferring institutions are to advise the party to be notified at the time the CCC acceptance date is established.  CCMs must ensure this has been done. Form  If the inmate is released prior to the date noted on BP-S323.014, Victim and Witness Notice, the CCM must renotify the victim or witness.  When an inmate's custody is extended beyond the scheduled release date; it is not necessary to renotify the victim or witness.  CCMs shall notify the interested party if the inmate goes on furlough, dies, or is apprehended as an escapee.  Attachments to the Program Statement can be used for making notifications.  If the inmate escapes, the CCM shall make immediate notification by telephone.  CCMs shall ensure the SENTRY Daily Log transaction is used to monitor Victim/ Witness Program cases placed in CCCs under their responsibility.

# RESPONDENT'S EXHIBIT 3

DEFENDANT'S
EXHIBIT
3



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD/CORR
**NUMBER:** 5270.07
**DATE:** December 29, 1987
**SUBJECT:** Inmate Discipline and
Special Housing Units

This Program Statement transmits policies and procedures
prescribed for Inmate Discipline and Special Housing Units. This
Program Statement becomes effective January 4, 1988. This
effective date means that the new rules and procedures will apply
to the processing of all acts of misconduct committed at and
after 12:01 a.m. on January 4, 1988.

\s\

J. MICHAEL QUINLAN
Director

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

NOTE: ONLY SIGNIFICANT CHANGES IN THE FORMER PROGRAM STATEMENT
ON INMATE DISCIPLINE (P.S. 5270.6) ARE INDICATED BY THE FOLLOWING
SYMBOL:*

[TABLE 3 - PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE
GREATEST CATEGORY

The UDC shall refer all Greatest Severity Prohibited Acts to the DHO with recommendations as to an appropriate disposition.

CODE   PROHIBITED ACTS

100   Killing

101   Assaulting any person          (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate)

102   Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution with violence

103   Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g. in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329)

SANCTIONS

A.   Recommend parole date rescission or retardation.

B.   Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1   Disallow ordinarily between 50 and 75% (27-41 days) of good conduct time credit available for year (a good conduct time  sanction may not be suspended).

C.   Disciplinary Transfer (recommend).

D.   Disciplinary segregation (up to 60 days).

E.   Make monetary restitution.

F.   Withhold statutory good time (Note - can be in addition to A through E - cannot be the only sanction executed).

G.   Loss of privileges (Note - can be in addition to A through E - cannot be the only sanction executed).]

[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | Sanctions A-G] |
| 105 | Rioting | |
| 106 | Encouraging others to riot | |
| 107 | Taking hostage(s) | |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 197 | Use of the telephone to further criminal activity. | |

[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 198 | Interfering with a staff member in the performance of duties.  (Conduct must be of the Greatest Severity nature.)  This charge is to be used only when another charge of greatest severity is not applicable. | Sanctions A-G] |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Greatest Severity nature.) This charge is to be used only when another charge of greatest severity is not applicable. | |

[TABLE 3 (Cont'd)
HIGH CATEGORY

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions--_without_ violence. | A. | Recommend parole date rescission or retardation. |
| 201 | Fighting with another person | B. | Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended) |
| 202 | (Note to be used) | | |
| 203 | Threatening another with bodily harm or any other offense | | |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | | |
| 205 | Engaging in sexual acts | B.1 | Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 206 | Making sexual proposals or threats to another | | |
| 207 | Wearing a disguise or a mask | | |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 30 days). |
| | | E. | Make monetary restitution. |
| 209 | Adulteration of any food or drink | F. | Withhold statutory good time] |
| 210 | (Not to be used) | | |
| 211 | Possessing any officer's or staff clothing | | |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|---|---|---|---|
| 212 | Engaging in, or encouraging a group demonstration | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | H. | Change housing (quarters) |
| 214 | (Not to be used) | I. | Remove from program and/or group activity |
| 215 | Introduction of alcohol into BOP facility | | |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | J. | Loss of job |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | K. | Impound inmate's personal property |
| | | L. | Confiscate contraband |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value | M. | Restrict to quarters] |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | | |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| | | Sanctions A-M] |
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyser or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code). | |
| 298 | Interfering with a staff member in the performance of duties.  (Conduct must be of the High Severity nature.)  This charge is to be used only when another charge of the high severity is not applicable. | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons.  (Conduct must be of the High Severity nature.)  This charge is to be used only when another charge of high severity is not applicable. | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 300 | Indecent Exposure | A. | Recommend parole date rescission or retardation. |
| 301 | (Not to be used) | | |
| 302 | Misuse of authorized medication | B. | Forfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized | | |
| 304 | Loaning of property or anything of value for profit or increased return | | |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels | | |
| 306 | Refusing to work, or to accept a program assignment | B.1 | Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 307 | Refusing to obey an order of any staff member (May be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed; e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered would be charged as Code 110) | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 15 days). |
| | | E. | Make monetary restitution. |
| 308 | Violating a condition of a furlough | F. | Withhold statutory good time.] |
| 309 | Violating a condition of a community program | | |
| 310 | Unexcused absence from work or any assignment | | |
| 311 | Failing to perform work as instructed by the supervisor | | |
| 312 | Insolence towards a staff member | | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS | |
|---|---|---|---|
| 313 | Lying or providing a false statement to a staff member. | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 314 | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security, or official paper. (May be categorized in terms of greater severity according to the nature of the item being reproduced; e.g., counterfeiting release papers to effect escape, Code 102 or Code 200) | H. | Change housing (quarters). |
| | | I. | Remove from program and/or group activity. |
| 315 | Participating in an unauthorized meeting or gathering | J. | Loss of job. |
| 316 | Being in an unauthorized area | K. | Impound inmate's personal property. |
| 317 | Failure to follow safety or sanitation regulations | L. | Confiscate contraband. |
| 318 | Using any equipment or machinery which is not specifically authorized | M. | Restrict to quarters. |
| 319 | Using any equipment or machinery contrary to instructions or posted safety standards | N. | Extra duty.] |
| 320 | Failing to stand count | | |
| 321 | Interfering with the taking of count | | |
| 322 | (Not to be used) | | |
| 323 | (Not to be used) | | |
| 324 | Gambling | | |
| 325 | Preparing or conducting a gambling pool | | |
| 326 | Possession of gambling paraphernalia | | |
| 327 | Unauthorized contacts with the public | | |
| 328 | Giving money or anything of value to, or accepting money or anything of value from: another inmate, or any other person without staff authorization | | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| | | Sanctions A-N] |

329   Destroying, altering or damaging
      government property, or the property of
      another person, having a value of $100.00
      or less

330   Being unsanitary or untidy; failing to
      keep one's person and one's quarters in
      accordance with posted standards

331   Possession, manufacture, or introduction
      of a non-hazardous tool or other
      non-hazardous contraband (Tool not likely
      to be used in an escape or escape
      attempt, or to serve as a weapon capable
      of doing serious bodily harm to others,
      or not hazardous to institutional
      security or personal safety; Other
      non-hazardous contraband includes such
      items as food or cosmetics)

332   Smoking where prohibited

397   Use of the telephone for abuses other
      than criminal activity (e.g., conference
      calling, possession and/or use of another
      inmate's PIN number, three-way calling,
      providing false information for
      preparation of a telephone list).

398   Interfering with a staff member in the
      performance of duties.  (Conduct must be
      of the Moderate Severity nature.)  This
      charge is to be used only when another
      charge of moderate severity is not
      applicable.

399   Conduct which disrupts or interferes with
      the security or orderly running of the
      institution or the Bureau of Prisons.
      (Conduct must be of the Moderate Severity
      nature).  This charge is to be used only
      when another charge of moderate severity
      is not applicable.

PS 5270.07
CN 13 1/9/2003
Chapter 4, Page 13

[TABLE 3 (Cont'd)
LOW MODERATE CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 400 | Possession of property belonging to another person | B.1  Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).] (See Chapter 4 Page 16 for VCCLEA violent and PLRA inmates.) |
| 401 | Possessing unauthorized amount of otherwise authorized clothing | |
| 402 | Malingering, feigning illness | |
| 403 | Not to be used | |
| 404 | Using abusive or obscene language | |
| 405 | Tattooing or self-mutilation | |
| * 406 | Not to be Used | * |
| 407 | Conduct with a visitor in violation of Bureau regulations (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G) | |
| 408 | Conducting a business | |
| 409 | Unauthorized physical contact (e.g., kissing, embracing) | [E.  Make monetary restitution. |
| * 410 | Unauthorized use of mail  (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G)(May be categorized and charged in terms of greater severity, according to the nature of the unauthorized use; e.g., the mail is used for planning, facilitating, committing an armed assault on the institution's secure perimeter, would be charged as Code 101, Assault) | F.  Withhold statutory good time.<br><br>G.  Loss of privileges: commissary, movies, recreation, etc.<br><br>H.  Change housing (quarters).<br><br>I.  Remove from program and/or group activity.] |

[TABLE 3    (Cont'd)
LOW MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|------|-----------|
| | | J. | Loss of job. |
| 497 | Use of the telephone for abuses other than criminal activity (e.g., exceeding the 15-minute time limit for telephone calls; using the telephone in an unauthorized area; placing of an unauthorized individual on the telephone list). | K. | Impound inmate's personal property. |
| | | L. | Confiscate contraband. |
| 498 | Interfering with a staff member in the performance of duties. Conduct must be of the Low Moderate Severity nature.) This charge is to be used only when another charge of low moderate severity is not applicable. | M. | Restrict to quarters. |
| | | N. | Extra duty. |
| | | O. | Reprimand. |
| 499 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Low Moderate severity nature.) This charge is to be used only when another charge of low moderate severity is not applicable. | P. | Warning. |

NOTE:  Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offenses itself.]

When the prohibited act is interfering with a staff member in the performance of duties (Code 198, 298, 398, or 498), or Conduct Which Disrupts (Code 199, 299, 399, or 499), the DHO or UDC, in its findings, should indicate a specific finding of the severity level of the conduct, and a comparison to an offense (or offenses) in that severity level which the DHO or UDC finds is most comparable.

Example: "We find the act of _____to be of High severity, most comparable to prohibited act Engaging in a Group Demonstration."

Sanction B.1 may be imposed on the Low Moderate category only where the inmate has committed the same low moderate prohibited act more than one time within a six-month period except for a VCCLEA inmate rated as violent or a PLRA inmate (See Chapter 4, Page 16).