## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| KATRINA READY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **2:07-cv-618-WHA** |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR THE TAKING OF TESTIMONY VIA TELEPHONE

Comes now the respondent, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and pursuant to Rule 43, Federal Rules of

Civil Procedure, requests that it be allowed to present the testimony of John Martin of

Redwood Toxicology Laboratory via telephone, and as grounds states as follows:

1.      This matter was initially filed on Tuesday, July 3, 2007 with service of the

petition on the United States on Thursday, July 5, 2007.  In essence the petitioner seeks

early release from confinement due to alleged infirmities in disciplinary proceedings

surrounding a urinalysis performed on May 8, 2007 and on the basis of alleged

harassment she allegedly suffered at the hands of employees of Bannum Place, a facility

under contract to provide community correctional services for the Bureau of Prisons.  The

questioned urinalysis detected alcohol in the petitioner's  urine, a violation of center rules

which resulted in the petitioner being transferred to the Elmore County Jail and losing

approximately 47 days of good conduct time credit.

2.    During the course of an evidentiary hearing held on Tuesday, July 11, 2007, the petitioner for the first time alleged that she had been coerced by a staff member of Bannum Place to drink the alcohol which appeared in her urine on May 8, 2007.[1] According to the petitioner, sometime between the hours of 6 and 10 pm on Monday, May 7, 2007, she was directed to the staff bathroom at Bannum Place where a male employee, Mr. Ruis, coerced her to consume a "miniature" of distilled spirits. The petitioner also confirmed that during the evening hours of May 8, 2007, she was required to submit to a mandatory urinalysis by Bannum Place staff.

3.    The undersigned has had conversations with the Mr. John Martin of the Redwood Toxicology Laboratory, located in Santa Rosa, California. It is the undersigned's belief that Mr. Martin would testify that the quantity and type of alcohol allegedly consumed by the plaintiff on May 7 would not have remained in her system such that it would be the basis for her urine to indicate the presence of alcohol approximately 24 hours later.[2]

4.    "For good cause in compelling circumstances and with appropriate

---

[1]    On May 23, 2007, the petitioner's family alleged to BOP staff that the urine sample was contaminated by Bannum Place employees. Similarly, the declaration of Douglas L. Bottoms attached to the petitioners initial motion impliedly asserts likewise. On another occasion the petitioner has stated that she intentionally failed the urinalysis in order to be removed from Bannum Place.

[2]    Attached hereto are the declarations of Mr. Martin, Government's Exhibit 4, as well as that of Mr. Wayne B. Ross, Chief Toxicologist, Redwood Toxicology Laboratory, Government's Exhibit 5.

safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Rule 43, Federal Rules of Civil Procedure. While "depositions, including video depositions, provide a superior means of securing the testimony of a witness who is beyond the reach of a trial subpoena," . . . ,"[a]n unforeseen need for the testimony of a remote witness that arises during trial, however, may establish good cause and compelling circumstances." Rule 43, Advisory Committee Notes, 1996 Amendment.

5.      Prior to the testimony of the petitioner the main inquiry regarding the urinalysis was whether it had been contaminated. Given the petitioner's pre hearing assertions that staff members of Bannum Place had contaminated her sample, the testimony of a toxicologist was not needed. All witnesses necessary to demonstrate that the defendant's employees had properly collected, stored and mailed the sample were immediately available here in Montgomery. Similarly, documentary evidence to support the defendants' anticipated assertion was readily available.

6.      The petitioner's testimony, however, constitutes an unforeseen change that necessitates the testimony of Mr. Martin regarding his lab's testing methods and the effect of time on the presence of alcohol in urine.

7.      "Good cause and compelling circumstances may be established with relative ease if all parties agree that testimony should be presented by transmission." Rule 43, Advisory Committee Notes, 1996 Amendment.

8.      Counsel for the petitioner has been contacted and he does not oppose this request.

Respectfully submitted this 13th day of July, 2007.

LEURA G. CANARY
United States Attorney

By:    s/R. Randolph Neeley
R. Randolph Neeley
Assistant United States Attorney
Bar Number:  #9083-E56R
Attorney for Defendant
United States Attorney's Office
Post Office Box 197
Montgomery, AL  36101-0197
Telephone:   (334) 223-7280
Facsimile:     (334) 223-7560
E-mail:  rand.neeley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/EDF system which will send notification of such filing to plaintiff's attorney, Benjamin E. Pool, Esq.

s/R. Randolph Neeley
R. Randolph Neeley
Post Office Box 197
Montgomery, AL 36101-0197
Telephone: (334) 223-7280
Facsimile: (334) 223-7418
E-Mail:  rand.neeley@usdoj.gov
Bar Number: #9083-E56R

GOVERNMENT
EXHIBIT 4

1   **DECLARATION**
2
3   I, John Martin, declare as follows:
4
5   I am the Technical Consultant / Certifying Scientist for Redwood Toxicology
6   Laboratory and have been so since May, 1998. Redwood Toxicology Laboratory is
7   located on 3650 Westwind Blvd. In Santa Rosa, California. This is also the mailing
8   address. The telephone number is (707) 577-7958. I have a Bachelor's Degree in
9   Biological Science, a Master's Degree in Biological Science, and a Master's Degree
10  in Clinical Laboratory Science. I am licensed by the State of California as a Clinical
11  Laboratory Scientist. I have been so licensed for the past 30 years and I have been
12  actively engaged in clinical laboratory, including the field of toxicology, including drug
13  screening for over 30 years. I have testified as a qualified expert concerning the
14  screening, confirmation, and interpretation of testing for drugs of abuse in urine in
15  Superior, Municipal, Juvenile, and Federal Courts throughout California.
16
17  Redwood Toxicology Laboratory is licensed by the State of California as a clinical
18  laboratory and is also licensed by the Federal Department of Health and Human
19  Services, Health Care Financing Administration under CLIA '88. Redwood
20  Toxicology Laboratory is also registered with the United States Justice Department
21  Drug Enforcement Administration as an Analytical Laboratory.
22
23  In conjunction with our uniform and industry established standard operating
24  procedures we have established reliable procedures for receiving and processing
25  urine specimens for the presence of drugs. The drugs include amphetamines,
26  barbiturates, cocaine metabolite, marijuana metabolite, opiates, phencyclidine,
27  benzodiazepines, propoxyphene, ethanol, ethylglucuronide, etc.
28
29  Our records indicate that the sample of urine, identified as _10772-002_, requisition
30  number _807127_, account number _13719_, date of collection _5/08/2007_, and
31  laboratory accession number _070514-02621_ was received in this laboratory on
32  _5/14/2007_. The specimen analyzed was received in the usual and customary way
33  such specimens are received by our laboratory.
34
35  Our laboratory tests indicated the presence of _Alcohol (Ethanol)_ in the urine
36  specimen identified by the above-noted accession number. The presence of this
37  substance was detected with an enzyme immunoassay (EIA) screening test and
38  confirmed by gas chromatography (GC), both considered proven scientific methods
39  for drugs of abuse testing.
40
41  The report attached to this declaration was made within 48 hours from the time the
42  specimen was received and analyzed (unless noted otherwise) either by the
43  technician/scientist personally, or with information received from that person. As
44  Technical Consultant/Certifying Scientist it is my customary duty to examine all
45  associated testing data and chain of custody documents prior to certifying results as
46  final and ready for release by the laboratory. Therefore based upon my examination



GOVERNMENT
EXHIBIT
4

47    and review of the testing data and chain of custody documents I can certify that the
48    scientist(s) who analyzed the aforementioned specimen followed all established
49    procedures and that the results as reflected in the report attached to this affidavit are
50    accurate, reliable and performed in accordance with applicable standard operating
51    protocols.
52
53    It is the regular practice of Redwood Toxicology Laboratory to prepare reports after
54    receiving and processing urine specimens for the presence of drugs. Accordingly,
55    the attached report was prepared in the course of our laboratory's regular practice.
56
57    I declare under penalty of perjury under the laws of the State of California that the
58    foregoing is true and correct and I would so testify.
59
60    Executed at Redwood Toxicology Laboratory on this **13** day of ___July___, 2007
61
62
63
64
65
66    (Declarant)
67
68
69
70
71
72

 REDWOOD
TOXICOLOGY
LABORATORY

3650 Westwind Blvd , Santa Rosa, CA 95403
Phone: 707-577-7959 / 800-255-2159
Fax 707-577-0365
www.redwoodtoxicology.com

Bannum Place Of Montgomery
Ms. Cheri Summers
540 Sayre Street
Montgomery, AL  36104

| ACCOUNT NUMBER | ACCESSION NUMBER |
|---|---|
| 13719 | 070514-02621 |

| IDENTIFICATION |
|---|
| 10772-002 Req# 807127 |

| ORDERED BY |
|---|
| Bannum Place Of Montgomery |

| NOTES | H3 * |
|---|---|
| (912) 963-0685 | |

| COLLECTED |
|---|
| 5/08/2007 10:05pm by ILW.. |

| RECEIVED | REPORTED |
|---|---|
| 5/14/2007 | 5/15/2007 |

| POSITIVES | TEST NAME | RESULT | |
|---|---|---|---|
| POS---------> | Alcohol (Ethanol) Confirmed by gas chromatography | .054 | gm/dL |
| | Amphetamines | None Detected | |
| | Barbiturates | None Detected | |
| | Benzodiazepines | None Detected | |
| | Cocaine (Benzoylecgonine) | None Detected | |
| | Opiates | None Detected | |
| | THC (Marijuana) | None Detected | |
| | Phencyclidine (PCP) | None Detected | |
| | Methadone | None Detected | |
| | Creatinine | 214.3 | mg/dL |
| | Propoxyphene | None Detected | |

**ILLEGIBLE LABEL:** Collector Illegible.
(Some of the information from the specimen bottle label was unreadable. If corrections are required please call.)

The results for this specimen have been tested in accordance with all Redwood Toxicology Laboratory standard operating procedures and have been reviewed by laboratory certifying scientists.

Chief Toxicologist: Wayne Ross, M.C.L.S.

070514-02621   7/13/2007 09:01:33

**Laboratory Directors:**
MARK J. DeMEO, M.D.
RICHARD R. WILBER, M.D.

Specimen disposition: Specimens will be disposed of as follows. Negatives: destroyed within 2 days; Positives, destroyed after 6 months; all methadone maintenance urines after 2 months.
SEE REVERSE SIDE FOR CERTIFICATION & TECHNICAL INFORMATION

GOVERNMENT
EXHIBIT 5



REDWOOD
TOXICOLOGY
LABORATORY

July 13, 2007

3650 Westwind Blvd.
Santa Rosa, CA 95403
Phone  707-577-7959
800-255-2159
Fax: 707-577-8102
www.redwoodtoxicology.com

R. Randolph Neeley
Assistant United States Attorney
U.S. Department of Justice
Middle District of Alabama
One Court Square, Suite 201
Montgomery Alabama  36101-0197

Dear Mr. Neeley:

I am writing in response to your request of July 13, 2007 to provide an interpretation of
urine drug screen results. In regard to the urine drug screen performed by Redwood
Toxicology Laboratory (RTL) and identified by RTL accession number 070514-02621
(ID: 10772-002, Req# 807127) I can offer the following interpretation.

Urine specimens reported positive for alcohol (ethanol), by Redwood Toxicology
Laboratory, have been specifically identified as such by scientifically accepted methods
(Enzyme assay, and gas chromatography / flame ionization detection). Gas
chromatography / flame ionization detection is the reference method, as described in
the scientific literature, for the identification and quantitation of ethanol in urine.

The referenced urine specimen was received by Redwood Toxicology Laboratory on
May 14, 2007 from Bannum Place of Montgomery, Alabama. The enzyme assay and
gas chromatography / flame ionization testing was performed on May 14, 2007, and
final results reported to Bannum Place of Montgomery, Alabama on May 15, 2007. The
urine alcohol (ethanol) concentration measured in the referenced specimen was .054
gm/dL.

A urine alcohol level of .054 gm/dL is roughly equivalent to a blood alcohol of .041
gm/dL. This is determined using a scientifically accepted conversion factor of 1.3 which
represents an average ratio of the water content between blood and urine. A .041
gm/dL blood alcohol represents the ingestion of approximately 2 – 3 12-oz. beers (or
other drink equivalents, such as a 5-oz glass of wine, or 1.5 oz. of 86 proof liquor) within
a 3 – 4 hour period. This is also dependent on other variables such as body weight ,
stomach contents, liver function, etc., however these estimates are probably fairly
accurate.

Information provided by Mr. Neeley in regard to the alleged time of ethanol
consumption, quantity of ethanol consumed, and time of urine collection is summarized
as follows:

Time of ethanol consumption:  6 – 9 PM May 7, 2007
Quantity of ethanol consumed: 1 miniature bottle of Crown Royal



GOVERNMENT
EXHIBIT
5

Time of urine collection: 10:05 PM May 8, 2007

If the individual had consumed a single miniature bottle of Crown Royal (approximately 1.5 oz. of 80-proof ethanol) within a short period of time (1 – 2 hours), an average individual weighing 160 pounds would attain a blood alcohol concentration of approximately .030 gm/dL. Following ethanol consumption, the peak blood ethanol concentration occurs, on average, at approximately 45 – 55 minutes post consumption. If the referenced individual had consumed the miniature bottle of Crown Royal between 6 – 9 PM on May 7, 2007, the peak ethanol concentration would have occurred between approximately 7 – 10 PM, May 7, 2007.

The liver metabolizes approximately 95% of ingested ethanol at a relatively constant rate. A normal liver will metabolize ethanol at a rate of approximately .015 gm/dL per hour. At this rate, it would take the body, approximately 2 hours to eliminate 1.5 ounces of 80-proof liquor, such as Crown Royal. Since the referenced urine specimen was collected approximately 25 hours (assuming ethanol ingestion was complete at 9 PM on 5/7/07 and the urine was collected at 10:05 PM on 5/8/07) post ethanol ingestion, the individual would have metabolized the equivalent of .375 gm/dL of ethanol. This is equal to approximately 12.5 drink equivalents, as described above, in addition to the 2 – 3 drink equivalents to produce the .054 gm/dL of ethanol detected in the referenced urine specimen.

Without knowledge of the individuals' quantity, quality and frequency of prior ethanol use, a definitive interpretation of urine drug screen results can always be very difficult. However, based upon my experience, training, and literature references, it is my opinion that the ethanol detected in the referenced specimen collected at 10:05 PM on 5/8/07, was not the result of ethanol ingestion which occurred between 6 – 9 PM on 5/7/07.

If I can answer any further questions please let me know.

Sincerely,

Wayne B. Ross, M.C.L.S., D.A.B.F.E.
Chief Toxicologist